No. 22-3488

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
*Plaintiff/Appellant,*

v.

RONALD LEE JACOBS,

*Defendant/Appellee.*
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
_____

BRIEF OF APPELLEE JACOBS
_____

DEBORAH L. WILLIAMS
Federal Public Defender

Kevin M. Schad
Attorney for Appellee
Appellate Director
250 E. Fifth St.
Suite 350
Cincinnati OH 45202
513.929.4834
Kevin_schad@fd.org

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT .............................................1

STATEMENT OF THE ISSUES.....................................................................2

STATEMENT OF THE CASE ........................................................................3

SUMMARY OF THE ARGUMENT ..................................................................9

ARGUMENT................................................................................................10

I.    THE DISTRICT COURT CORRECTLY DETERMINED THAT THE
      THREATS BY OFFICER AGEE TO JACOB'S FAMILY WERE
      SUFFICIENT TO OVERBEAR HIS WILL, AND THUS
      SUPPRESSION OF HIS CONFESSION WAS PROPER .......................10

      A.    Appellee Jacobs will was overborne by the threats made to
            his family .....................................................................................11

      B.    The fruits of Jacob's coerced confession should be
            suppressed.....................................................................................17

CONCLUSION ...........................................................................................21

CERTIFICATE OF COMPLIANCE...................................................................22

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

# TABLE OF AUTHORITIES

## Cases

*Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)...........................................................................16

*Bram v. United States*, 168 U.S. 532, 542-43 (1897) ...............................12

*Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986)...................................................................................................12

*Greer v. City of Highland Park, Michigan*, 884 F.3d 310, 316 (6th Cir. 2018)......................................................................................................13

*Hill v. Shoop*, 11 F.4th 373, 426 (6th Cir. 2021) .....................................12

*Johnson v. Warren*, 2020 WL 8254336, at *3 (6th Cir. 2020) ..............12

*Lewis v. Curtain*, 632 F. App'x 788, 794 (6th Cir. 2015) ........................15

*Maryland v. King*, 569 U.S. 435, 448, 133 S. Ct. 1958, 1970, 186 L. Ed. 2d 1 (2013) ..............................................................................................13

*United States v. Boumelhem*, 339 F.3d 414, 428 (6th Cir. 2003) ...........15

*United States v. Clayton*, 937 F.3d 630, 641 (6th Cir. 2019) ..................12

*United States v. Collado-Rivera*, 759 F. App'x 455, 460 (6th Cir. 2019)......................................................................................................12

*United States v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022).........18, 19

*United States v. Elmore*, 18 F.4th 193, 199 (6th Cir. 2021) ...................17

*United States v. Fields*, 515 F. App'x 363, 364 (6th Cir. 2013) .............16

*United States v. Finch*, 998 F.2d 349 (6th Cir. 1993).............................13

*United States v. Helton*, 35 F.4th 511, 518 (6th Cir. 2022)....................20

*United States v. Johnson*, 351 F.3d 254, 263 (6th Cir. 2003).................13

*United States v. Salvo*, 133 F.3d 943 (6th Cir. 1998) ..............................14

*United States v. Sharp,* 40 F.4th 749, 752 (6th Cir. 2022)................10

*United States v. Wilkinson*, 926 F.2d 22, 25 (1st Cir. 1991) ..................15

*Utah v. Strieff*, 579 U.S. 232, 238, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016).........................................................................................18

## JURISDICTIONAL STATEMENT

This appeal follows from the district court's order suppressing Appellee Jacob's confession. (R.106, Order, PAGE ID # 944)  Jurisdiction is proper in this Court pursuant to 18 U.S.C. § 3731. A timely notice of appeal was filed on May 25, 2022. (R.107, Notice of Appeal PAGE ID # 960)

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Jacobs submits that the briefs sufficiently outline the issue on appeal, and therefore oral argument is unnecessary and will not aid the Court in disposition of the Government's claim.

Respectfully requested,

 /s/ *Kevin M. Schad*
Kevin M. Schad
Attorney for Appellee

## STATEMENT OF THE ISSUES

1. The district court committed no error, legal or otherwise, in determining that officer Agee's threats to destroy Appellee Jacob's father's home resulted in a coerced confession.

## STATEMENT OF THE CASE

On November 2, 2020, Appellee Ronald Jacobs turned himself in at Columbus Ohio police headquarters.  Jacobs had learned there was an arrest warrant issued for him.  He was taken into custody and placed in an interview room.  Shortly thereafter, Columbus police detective Agee began a two-hour interview with Jacobs.

Agee began by informing Jacobs of his rights, and asking Jacobs to acknowledge that he had informed him of his rights. (R.53-1, Transcript of Interview PAGE ID # 361)  After some initial conversation, Agee asked Jacobs about a series of armed robberies that had occurred.  Jacobs said little in response, other than to deny that it was him in any of the surveillance. (R.53-1, Interview PAGE ID # 373,378,390)  The videos, photos, and other information obtained from these robberies showed the robber using a sawed-off shotgun in some of the robberies, and potentially a handgun in others.  In addition, Agee commented that in several of the photos, the robber was wearing clothing stained in a similar fashion to the clothing that Jacobs was wearing in the interview.

One particular robbery that Agee discussed with Jacobs was the robbery of a Walgreens in Columbus Ohio on October 12, 2020.  Jacobs indicated that,

at the time of the robbery (8:24pm), he was at work. (R.53-1, Interview PAGE ID # 370)  Agee informed Jacobs that a package of gum touched by the robber was retrieved from the store after the robbery, and that it contained Jacob's fingerprint. (R.53-1, Interview PAGE ID # 376)

Agee asked if they could take a DNA sample from Jacobs.  Jacobs responded with "with a lawyer, yeah." (R.53-1, Interview PAGE ID # 391)  Agee then stated that they would get a search warrant for the DNA.  Agee then became aggressive, stating: "I'm going to do – if I have to because I've already got it written up.  It's only 3:00 in the afternoon. I'll go down to the clerks. I'll get a search warrant signed and I'll go over to your dad's house, and I will dump everything in that house out looking for those clothes, and all those clothes there." (R.53-1, Interview PAGE ID # 393)    Agee continued:

> This is what I am going to do because I have to find that evidence.  I've got to find those guns. And I'll do a search warrant on your dad's house because that's where you're staying, and I'll look for it. And I'll toss the whole place until I find my evidence. I'll toss your car. Car will be impounded. We've got your fingerprint. You're on the hook for this. This will go to the grand jury. That's 12 robberies total. You did, what, eight years last time? This will be longer. That is, unless you think about what you've done. And I can't make any promises. I would have to talk to a prosecutor. It's got to go to a prosecutor first. But you know you're screwed.

(R.53-1, Interview PAGE ID # 393)

Agee then informed Jacobs that the 12 robberies would make him a career
violent criminal, and that the court could impose consecutive sentences on
each robbery. (R.53-1, Interview PAGE ID # 394)  Jacobs asked to use the
phone – Agee refused.  Agee then suggested a short break, to let Jacobs
"think about this." (R.53-1, Interview PAGE ID # 395)  Agee then left the
room.

As described by the district court, "the breaking point is caught on film.
In the video recording, mere seconds after Detective Agee leaves [Jacobs] to
'think about this' alone [ ] , [Jacobs]'s head collapses heavily into his arms,
where he remains largely immobile until Detective Agee reenters the room
about six minutes later." (R.106, Opinion PAGE ID # 951)  When Agee
returned, Jacobs admitted "I fucked up bad,", and confessed. (R.53-1,
Interview PAGE ID # 397)  Jacobs implored "I don't want you to go tear up
that shit, man." To which Agee replied "[a]nd I don't want to do that either."
(PAGE ID # 407)   Jacobs admitted to participating in most of the robberies,
and to using a sawed-off shotgun for some.

Appellee Jacobs was indicted by a grand jury on March 26, 2021,
charging the Hobbs Act robbery of the Walgreens on October 12, 2020, along

with brandishing a firearm during that robbery. (R.17, Indictment PAGE ID #
26)  A superseding indictment was filed on September 28, 2021, adding a
robbery of a Hampton Inn on September 5, 2020, a robbery of a Wing Snob
restaurant on September 12, 2020, a robbery of a United Dairy Farmers on
September 24, 2020, robbery of a Shell gas station on September 30, 2020,
and robbery of another Wing Snob restaurant on October 8, 2020.  Each of
these robbery charges was accompanied by brandishing of firearm counts.
(R.25, Superseding Indictment PAGE ID # 53)

Appellee Jacobs moved to suppress the statements made on November
2, 2020. (R.36, Motion PAGE ID # 93)  The defense also provided notice of its
intent to use an expert witness on false confessions.  (R.54, Notice PAGE ID #
549)  These two motions resulted in a suppression hearing held on May 19,
2022.  At that hearing, the defense's proposed witness, Dr. Richard Leo,
testified.  The Government called no witnesses.  The district court determined
that the confession was the product of coercion, and thus would be
suppressed.  (R.116, Hearing PAGE ID # 1253)  "[I]f Detective Agee had not
threatened to dump everything in that house and then threaten to just toss the
whole place, then there's a great likelihood that it wouldn't be suppressed. But
I thought that that threat, that threat - and it was a threat - was critical in

forcing Mr. Jacobs to confess." (PAGE ID # 1253)  The court found it unnecessary to rule on the admissibility of Dr. Leo's testimony, given the suppression decision. (PAGE ID # 1256)

The district court followed this oral pronouncement up with a written decision on May 24, 2022. (R.106, Order and Opinion PAGE ID # 944)  The court first noted that while advising a person of the possibility of a search warrant was not improper, threatening to "dump everything out" and "toss the whole place" was coercive, and not conduct supported by the Constitution. (R.106, Order PAGE ID # 949)  "By threatening to destroy the home of Defendant's father, Detective Agee created an impossible bind: either confess, or subject your father to an abuse of police power. Any person's will would break in that situation." (PAGE ID # 950)  The court confirmed that it need not consider the proposed testimony of Dr. Leo to make this conclusion, (PAGE ID # 952), and any ruling on the admission of Dr. Leo's testimony was moot.

Finally, the court determined that clothing found at Appellee Jacob's girlfriends house need not be suppressed, as "inevitable discovery" would have led to the clothing, regardless of the confession.  "Detective Agee was prepared to impound Defendant's car and execute a search warrant on his

father's house. [ ] If those did not return the clothing, the obvious next steps in the investigation would be to learn the identity of Defendant's girlfriend and execute a warrant on her house. Neither would have been difficult, given the information volunteered by Defendant early in the interview. Nor would the clothing have been overlooked in a search of Ms. Miller's house. It was in the expected place [ ] and Detective Agee knew specific items to look for from his review of the surveillance footage. Thus, all indications are that the evidence would have emerged without the coerced confession." (PAGE ID # 954)

## SUMMARY OF THE ARGUMENT

### I.

"By threatening to destroy the home of Defendant's father, Detective Agee created an impossible bind: either confess, or subject your father to an abuse of police power. Any person's will would break in that situation." The district court did not error in finding that Appellee Jacob's will was overborn by police, and the decision to suppress Jacob's confession should be upheld.

## ARGUMENT

### I.   THE DISTRICT COURT CORRECTLY DETERMINED THAT THE THREATS BY OFFICER AGEE TO JACOB'S FAMILY WERE SUFFICIENT TO OVERBEAR HIS WILL, AND THUS SUPPRESSION OF HIS CONFESSION WAS PROPER

Appellee Jacob's statements to detective Agee regarding his involvement in several robberies were properly suppressed by the district court. Detective Agee's threats to Jacob's family were coercive, as he did not have legal authority to destroy Jacob's father's residence as part of any search. These threats directly caused Jacobs to confess. This Court should affirm the district court's decision.

**Standard of Review**

"In reviewing the denial of a motion to suppress, we review legal questions de novo and the district court's factual findings for clear error," taking the evidence "in a light most favorable to the" prevailing party, which in this case is Appellee Jacobs. *United States v. Sharp*, 40 F.4th 749, 752 (6th Cir. 2022).

Appellee Ronald Jacobs voluntarily turned himself into police after an arrest warrant was issued for him for a robbery of a Walgreens store. He was placed into an interrogation room, and for approximately 45 minutes to an

hour, Columbus detective Agee interrogated him about several robberies. Jacobs did not admit to any involvement.  Agee then informed Jacobs he would get a search warrant for Jacob's father's house, and would "tear it up" and "toss the whole place," as well as Jacob's vehicle.  Agee then told Jacobs that conviction on the robberies would make him a career violent criminal, and that the court could impose consecutive sentences on each robbery. Jacobs asked to use the phone – Agee refused.  Agee then suggested a short break, to let Jacobs "think about this."  Review of the video shows at that point Jacobs broke – after a six minute pause, Agee returned, and Jacobs made incriminating statements, telling Agee "I don't want you to go tear up that shit, man."  The district court properly found that Agee's threats overbore Jacob's will, resulting in a coerced confession.  The Government's arguments to the contrary are not well taken.

### A.    Appellee Jacobs will was overborne by the threats made to his family

The district court properly suppressed statements made by Appellee Jacobs in response to threats to Jacob's family made by detective Agee.

 "An admissible confession 'must be free and voluntary; [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or

implied promises, however slight, nor by the exertion of any improper influence.'" *Johnson v. Warren*, 2020 WL 8254336, at *3 (6th Cir. 2020), citing *Bram v. United States*, 168 U.S. 532, 542-43 (1897)). "The government must prove by a preponderance of the evidence the voluntariness of an accused's confession." *United States v. Collado-Rivera*, 759 F. App'x 455, 460 (6th Cir. 2019). The parties agree this Court has set forth a three-factor test to determine whether a confession was voluntarily made: "(1) Was the police activity objectively coercive? (2) Was the coercive activity sufficient to overbear the defendant's will? and (3) Was 'the alleged police misconduct ... the crucial motivating factor in the defendant's decision to offer the statement'?" *United States v. Clayton*, 937 F.3d 630, 641 (6th Cir. 2019)(internal citations omitted).

"[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary ....'" *Hill v. Shoop*, 11 F.4th 373, 426 (6th Cir. 2021), citing *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). The district court held that detective Agee's statements that he was going to "dump everything out" of Jacob's father's home and "toss the whole place" was coercive, and not conduct supported by the Constitution. This Court's caselaw supports the district court's conclusion.

This Court has determined that whether a threat to family members of a defendant is unduly coercive turns on "whether the threat could have been lawfully executed." *United States v. Johnson*, 351 F.3d 254, 263 (6th Cir. 2003). In *United States v. Finch*, 998 F.2d 349 (6th Cir. 1993), this Court held that police threats to arrest family members (with no legal cause) unless the defendant told them where drugs were located was inherently coercive, and rendered the confession and its fruits inadmissible.

Here, there is no question that Agee's threats were not threats that could have been "lawfully executed." Even if Agee could obtain a search warrant, this does not allow "indiscriminate police behavior." Rather, performance of a warrant must be "must be reasonable in its scope and manner of execution." *Maryland v. King*, 569 U.S. 435, 448, 133 S. Ct. 1958, 1970, 186 L. Ed. 2d 1 (2013). "To satisfy the Reasonableness Clause, officers not only must obtain a valid warrant but they also must conduct the search in a reasonable manner." *Greer v. City of Highland Park, Michigan*, 884 F.3d 310, 316 (6th Cir. 2018).

The Government would like the facts of this case to be that detective Agee was merely "forecasting a search warrant" (Government Brief Page: 27), which this Court has admittedly held is not overly coercive. See *United States*

*v. Salvo*, 133 F.3d 943 (6th Cir. 1998). The problem for the Government is that the record does not reflect this. Instead, the record clearly reflects that Agee threatened to destroy Jacob's father's home. This was coercion.

Instead of focusing on what detective Agee did, the Government asks this Court to focus on what Agee did not do. The Government points out that Agee did not raise his voice (Government Brief Page: 34), that he told Jacobs he was not threatening him (Government Brief Page: 35), and that Agee did not handcuff Jacobs (Government Brief Page 41) as a basis to find that Jacob's will was not overborne. While these facts are true, they do not mitigate Agee's threat. If this is the standard, then Agee could have done something so egregious as hold a gun to Jacob's head, so long as he left him unhandcuffed, provided him with water, and spoke nicely to him. Although this Court should consider the circumstances surrounding Agee's threats, it does not discount the threats made to Jacob's family.

The Government alternatively claims that detective Agee was merely "speaking colloquially" when he threatened to tear apart Jacob's father's home. (Government Brief Page: 34)   First, the Government presented no evidence on this topic; rather, this appears to be a post hoc appellate argument never developed in the record below. As such, it is waived. *United*

14

*States v. Boumelhem*, 339 F.3d 414, 428 (6th Cir. 2003).  Moreover, the Government cites only one authority supporting its claim: *United States v. Wilkinson*, 926 F.2d 22, 25 (1st Cir. 1991).  That the Government needs to rely on an out of circuit case from almost a third of a century ago belies any argument that this sort of threat is just "colloquial conversation" that is used by police regularly.   This argument is without merit, and it cheapens what happened to Jacobs in that interrogation room.

Turning to the second factor, detective Agee's threats to tear apart Jacob's father's house were sufficient to overbear Jacob's will.  "In determining whether a defendant's will was overborne, courts must consider the totality of the circumstances surrounding the confession, including the characteristics of the defendant and the details of the interrogation." *Lewis v. Curtain*, 632 F. App'x 788, 794 (6th Cir. 2015).  Here, there is no reason to disturb the district court's finding that "[b]y threatening to destroy the home of Defendant's father, Detective Agee created an impossible bind: either confess, or subject your father to an abuse of police power. Any person's will would break in that situation."  A review of the video shows that Jacobs was tired during the interview (his head was down before the interview, and often during it).  His prior experience with law enforcement, as the district court

noted, is a "double-edge sword" as his familiarity with the system gave him knowledge "that the police are capable, if they so choose, to take a search warrant – and maybe it's not a totally reasonable search. Maybe they will dump everything in the man's house, in the father's house, out in the yard." (R.116, Hearing PAGE ID # 1249)   Any person faced with this threat (who cared about their family) would buckle.   Appellee Jacob's characteristics and experiences place him in no better position to withstand these threats.

Finally, there can be no question but that detective Agee's threats to Jacob's family were the motivating factor in his decision to confess.   The district court found "if Detective Agee had not threatened to dump everything in that house and then threaten to just toss the whole place, then there's a great likelihood that it wouldn't be suppressed. But I thought that that threat, that threat - and it was a threat - was critical in forcing Mr. Jacobs to confess." (R.116, Hearing PAGE ID # 1253)   This Court should defer to the district court's factual determination.   "Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." *United States v. Fields*, 515 F. App'x 363, 364 (6th Cir. 2013), citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

As a final note, this Court can consider that suppression of this evidence does not vitiate the Government's case. Even without the confession (and the evidence obtained as a result), the Government still has surveillance video which detective Agee contends identifies Jacobs. The Government also has a fingerprint on a package of gum from the Walgreens robbery identified as being Jacob's print. Therefore, although it makes their case a little more difficult, suppression does not prevent the Government from moving forward with this prosecution.

In sum, detective Agee's threats to tear up Jacob's father's house directly resulted in his subsequent statements. The district court properly found this required their suppression, and this Court should not find that the district court committed reversible error.

### B. The fruits of Jacob's coerced confession should be suppressed

The fruit of the poisonous tree "doctrine counsels for the exclusion of evidence 'derived from information or items obtained in'" violation of the Constitution. *United States v. Elmore*, 18 F.4th 193, 199 (6th Cir. 2021). "[T]o determine whether evidence should be excluded as fruit of the poisonous tree, we ask whether the evidence 'has been come at by exploitation of [the

underlying] illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id.*

Although the district court suppressed Jacob's confession, it held that the "inevitable discovery" doctrine allowed admission of the physical evidence obtained from Jacob's girlfriend's residence.  This was incorrect.

"[T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Utah v. Strieff*, 579 U.S. 232, 238, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016).  This Court has determined there are two scenarios in which the inevitable discovery doctrine can be used: first, where "there is 'an independent, untainted investigation' that was bound to uncover the same evidence;" and second, where "other compelling facts demonstrate that discovery was inevitable." *United States v. Cooper*, 24 F.4th 1086, 1091 (6th Cir. 2022).  In *Cooper*, this Court held that courts had historically confused this doctrine with the attenuation doctrine, and provided clarity of how to apply each doctrine.  The Court explained that a district court must, in evaluating the inevitable discovery doctrine, determine a "hypothetical scenario" that asks "what would have happened had the illegality not occurred." *Id.* at 1095.

18

Here, the district court, in not excluding the physical evidence as fruit of the poisonous tree, incorrectly utilized the inevitable discovery doctrine. The court found that without the confession, "Detective Agee was prepared to impound Defendant's car and execute a search warrant on his father's house. [ ] If those did not return the clothing, the obvious next steps in the investigation would be to learn the identity of Defendant's girlfriend and execute a warrant on her house. Neither would have been difficult, given the information volunteered by Defendant early in the interview. Nor would the clothing have been overlooked in a search of Ms. Miller's house. It was in the expected place [ ], and Detective Agee knew specific items to look for from his review of the surveillance footage. Thus, all indications are that the evidence would have emerged without the coerced confession." (R.106, Order PAGE ID # 954)

This analysis does not hold up under an inevitable discovery analysis. As *Cooper* mandates, the court must not only ask whether certain evidence would have been found, but also whether there would have been a legal basis to find the evidence without the illegality. *Cooper* at 1095. If detective Agee would have had probable cause to obtain a warrant for Appellee Jacob's vehicle and his father's house (where he also lived), these facts do not

therefore give Agee probable cause to search the residence of Jacob's girlfriend's residence.  Without Jacob's confession, there is no tie to that residence as to any illegality.  No reasonable magistrate or judge would have signed off on a search warrant based solely on the allegation that, if evidence of illegality isn't in the Appellee's possession, it must be at the girlfriend's house.  Rather, "[t]he search warrant affidavit must establish a nexus between the place to be searched and the evidence sought." *United States v. Helton*, 35 F.4th 511, 518 (6th Cir. 2022).  Therefore, there can be no "inevitable discovery" of this evidence, and the fruits from the poisonous tree of the coerced confession should have also been suppressed.

## CONCLUSION

For the foregoing reasons, Jacobs respectfully requests this Court affirm the district court's suppression decision, but remand with instructions to suppress the fruits of the coerced confession.

Respectfully Submitted,

DEBORAH L. WILLIAMS
Federal Public Defender

 /s/ *Kevin M. Schad*
Kevin M. Schad
Attorney for Appellee
Appellate Director
Office of the Federal Public Defender
Southern District of Ohio
250 E. Fifth St.
Suite 350
Cincinnati OH 45202
(513) 929-4834
Fax (513) 929-4842
Kevin_schad@fd.org

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that the foregoing brief complies with the type-volume limitation provided in Federal Rule of Appellate Procedure 32(a)(7)(B). The relevant portions of the foregoing brief contain 4442 words in Century Schoolbook (14-point) type.  The word processing software used to prepare this brief was Microsoft Office 365.

/s/ *Kevin M. Schad*
Kevin Schad
Counsel for Appellee

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2022, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will send notification of such filing to the following at their e-mail addresses on file with the Court:

Assistant United States Attorney Mary Beth Young

/s/ *Kevin M. Schad*
_____

Kevin Schad
Attorney for Appellee

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

In accordance with 6 Cir. R. 30, Appellee hereby designates as "Relevant District Court Documents" the following documents filed in the district court and available via that court's electronic CM/ECF system:

| District Court Docket Number | Page ID# | Description of Document |
|---|---|---|
| 25 | 53-60 | Superseding Indictment |
| 36 | 93-116 | Motion to Exclude Confession |
| 61 | 628-649 | Response in Opposition |
| 106 | 944-959 | Opinion and Order |
| 107 | 960-962 | Notice of Appeal |
| 116 | 1124-1264 | Transcript Hearing 5.19.22 |